IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CV-13-D

DR. JOSEPH ASKEW, et al., )
 )
               Plaintiffs, )
 )
v. ) **ORDER**
 )
CITY OF KINSTON, et al., )
 )
               Defendants. )

On January 22, 2019, Dr. Joseph Askew ("Askew"), Nathaniel Baker ("N. Baker"), Gordon Wade ("Wade"), Curtis Washington ("Washington"), and Askew's Day Care, Inc. ("Askew's Day Care"; collectively "plaintiffs"), proceeding pro se, filed a complaint against the City of Kinston ("Kinston"), Greg Dempsey ("Dempsey"), Jason Baker ("J. Baker"), Jackie Rogers ("Rogers"), and Adam Short ("Short"; collectively "defendants") [D.E. 1].[1] Plaintiffs allege "violations of their [Fourteenth] amendment, substantial due process, equal protection rights, discrimination, disparity and condemnation of a historical home." Id. ¶ 20. On January 31, 2019, plaintiffs moved for a temporary restraining order ("TRO") and a preliminary injunction [D.E. 11]. On February 6, 2019, plaintiffs moved for a jury trial [D.E. 13].

On February 21, 2019, defendants moved to dismiss plaintiffs' complaint under Rules 12(b)(1), (2), (4), and (5) of the Federal Rules of Civil Procedure [D.E. 23], filed supplemental exhibits [D.E. 24–32], filed a memorandum in support [D.E. 33], and responded in opposition to

---

[1] "[A] corporation may appear in the federal courts only through licensed counsel." Rowland v. Cal. Men's Colony, 506 U.S. 194, 202 (1993). Thus, Askew's Day Care may not proceed as a plaintiff pro se. On March 18, 2019, Ralph T. Bryant, Jr. filed a notice of appearance on behalf of all plaintiffs, including Askew's Day Care [D.E. 36].

plaintiffs' motions for a TRO and preliminary injunction [D.E. 34]. On February 22, 2019, the court notified plaintiffs about the motion, the consequences of failing to respond, and the response deadline [D.E. 35]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On April 1, 2019, plaintiffs responded in opposition to defendants' motion to dismiss and dismissed Dempsey, J. Baker, Rogers, and Short as defendants [D.E. 38]. On April 15, 2019, defendants replied [D.E. 40]. As explained below, the court grants defendants' motion to dismiss, dismisses plaintiffs' complaint, and denies plaintiffs' motions for a TRO and preliminary injunction and for a jury trial.

I.

Plaintiffs' complaint concerns the condemnation or possible condemnation of six properties in Kinston, North Carolina: 510 East Gordon Street, 603 East Gordon Street, 607 East Gordon Street, 110 Trianon Street, 412 North Mitchell Street, and 610 North Independent Street. See Compl. [D.E. 1] 4, 9. Plaintiffs are "individual citizens who have personal and private cause concerning the demolitions, eminent domain, [and] takings of property in Black neighborhoods." Id. ¶ 5. Askew, at one time, was one of the largest property owners in the Trianon Historical District in Kinston, North Carolina. See id. at 5. Baker resides at 607 East Gordon Street and "is the manager of the subject property . . . and is in charge of its upkeep." Id. at 9. Washington owns 610 North Independence Street. See id. Wade is repairing 412 Mitchell Street. See id.

On January 14, 2013, Kinston released a list of 30 houses "slated for demolition." Id. at 4. Among the houses to be demolished were 510 East Gordon Street, 603 East Gordon Street, 607 East Gordon Street, and 110 Trianon Street. See id. At the time, members of the Askew family owned these four properties. See id. On May 12, 2017, Joseph Askew Jr. ("Askew Jr.") received a letter of condemnation from Kinston concerning 603 East Gordon Street. See id. ¶ 11. Plaintiffs allege

2

that 603 East Gordon Street, 607 East Gordon Street, and 110 Trianon Street are part of the Trianon Historical District. See id. at 5.

Askew met with J. Baker, a city employee in "code enforcement," to discuss the condemned properties. See id. at 4. Plaintiffs allege that J. Baker told Askew that "they could demolish 510 East Gordon Street with community grant funds." Id.; see id. ¶ 13. Plaintiffs allege that the community grant funds are available "to help Blacks and low income individuals that could not afford to have their historic homes rehabilitated or demolished." Id. at 5. Instead of demolishing 501 East Gordon Street, Askew decided to repair it, and he asked J. Baker if the community grant funds could be used to demolish 603 East Gordon Street. See id. at 4; ¶ 13. J. Baker replied that he could not use community grant funds to demolish 603 East Gordon Street because "it was a historic property." Id. at 4. Plaintiffs allege that this representation was not true and that J. Baker misled Askew because he is racist. See id.

Because Askew could not use community grant funds to demolish 603 East Gordon Street, Askew asked for time to rehabilitate 603 East Gordon Street. See id. ¶ 14. Askew planned to save valuable historical materials from the property, obtain grants from Housing and Urban Development ("HUD") and the Department of Veterans Affairs ("VA"), and convert the properties (including 110 North Trianon Street and 607 East Gordon Street) into a building to house approximately 30 homeless veterans. See id. Although Askew asked for 180 days to complete his project, Rogers told Askew that he could have 75 days to rehabilitate the property. See id. Askew appealed to the Kinston City Council. See id. ¶ 16. Askew alleges that the Kinston City Council only permitted him to present his plans for three minutes. See id. ¶¶ 17–18. The Kinston City Council denied Askew's appeal. See id. ¶ 18.

Plaintiffs allege that Short, the director of city planning for Kinston, told Askew that, because

3

Askew only repaired 510 East Gordon Street and never rented it, Kinston intended to demolish 603 East Gordon Street and "place a lien against it and then take the property by foreclosure." Id. at 4. Plaintiffs allege that Kinston's plan was part of "a retaliatory tact surrounded by racial bias" because Askew did not convert 510 East Gordon Street into rental property. Id. Askew alleges that white property owners were not required to convert their properties into rental properties. See id. at 5.

On April 9, 2018, Kinston held a hearing concerning 607 East Gordon Street and 110 North Trianon Street. See id. At the hearing, Askew read a statement accusing Dempsey and other Kinston building inspectors of bias against him due to a criminal incident. See id. at 5–6. At the end of the hearing, Rogers gave Askew 60 days to complete phase one of rehabilitation of 607 East Gordon Street, 120 days to complete phase two, and 120 days to complete phase three. See id. at 6. Rogers also gave Askew 120 days to repair 110 North Trianon Street. See id. Plaintiffs allege that Askew did not know that the times to complete rehabilitation of 607 East Gordon Street and 110 North Trianon Street would run concurrently. See id.

After 120 days, Rogers inspected 110 North Trianon Street, noted the minimal work that had been completed to repair the property, and took pictures. See id. At 603 East Gordon Street, Rogers allowed a demolition company to drive across the property, damaging the hedges. See id. at 6–7. According to plaintiffs, "[n]o small contractor in the area could have completed the work needed for a historical property in the Trianon Historical District in the time given by the building inspector." Id. at 7. On January 7, 2019, Askew presented these concerns to the Kinston City Council and requested "three to five or ten years to do the repairs." Id. at 7–8. At some point after that hearing, 603 East Gordon Street was demolished. See id. at 9.

Finally, plaintiffs allege that Washington, who owns 610 North Independence Street, had his auto mechanic building condemned by Kinston. See id. Plaintiffs also seek an injunction

4

concerning the property at 412 Mitchell Street because Wade has started repairing the property. See id.

II.

A.

Defendants argue that plaintiffs' claims concerning some of the properties, the Just Compensation Clause, and procedural due process are not ripe. See [D.E. 33] 10–14.[2] "The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in clean-cut and concrete form." Miller v. Brown, 462 F.3d 312, 318–19 (4th Cir. 2006) (quotation omitted); see Rescue Army v. Mun. Court of L.A., 331 U.S. 549, 584 (1947); Scoggins v. Lee's Crossing Homeowners Ass'n, 718 F.3d 262, 269–70 (4th Cir. 2013); Lansdowne on the Potomac Homeowners Ass'n v. OpenBand at Lansdowne, LLC, 713 F.3d 187, 198 (4th Cir. 2013). The ripeness doctrine "require[s] courts to avoid taking premature judicial action, thereby preventing them from becoming entangled in abstract disagreements." Scoggins, 718 F.3d at 270 (quotation omitted). In considering whether a claim is ripe, courts balance "the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." Miller, 462 F.3d at 319 (quotation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (quotations omitted); see Scoggins, 718 F.3d at 270; Miller, 462 F.3d at 319; Franks v. Ross, 313 F.3d 184, 195 (4th Cir. 2002) ("A case is fit for judicial decision where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." (alterations and quotation omitted)). The hardship prong "is measured by the immediacy of the threat and the burden imposed on the plaintiff." Lansdowne, 713 F.3d at

---

[2] Plaintiffs do not raise a procedural due process claim. See [D.E. 38] 2.

5

199 (quotation and alteration omitted). "Where an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court." Doe v. Va. Dep't of State Police, 713 F.3d 745, 758 (4th Cir. 2013); see Franks, 313 F.3d at 195.

Plaintiffs fail to allege that Kinston has made a final decision concerning condemnation or demolition of the properties at 610 East Independence Street, 412 North Mitchell Street, and 607 East Gordon Street. Because plaintiffs' alleged injury depends on a contingent future decision, their claims concerning these properties are not ripe. See Texas, 523 U.S. at 300; Thomas v. Union Carbide Agri. Prods. Co., 473 U.S. 568, 580–81 (1985); Scoggins, 718 F.3d at 270; Miller, 462 F.3d at 319; Franks, 313 F.3d at 195. Thus, the court lacks jurisdiction to address claims concerning 610 East Independence Street, 412 North Mitchell Street, and 607 East Gordon Street. Accordingly, the court grants defendants' motion to dismiss such claims.

Plaintiffs' section 1983 claim based on the Just Compensation Clause also are not ripe because plaintiffs have not "sought compensation through the procedures the State has provided for doing so." Sansotta v. Town of Nags Head, 724 F.3d 533, 544 (4th Cir. 2013) (quotation omitted); see Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 195 (1985); Holliday Amusement Co. of Charleston, Inc. v. S. Carolina, 493 F.3d 404, 406–07 (4th Cir. 2007).[3] Accordingly, the court grants defendants' motion to dismiss that claim.

B.

Defendants argue that plaintiffs lack standing to bring claims arising from the remaining properties (510 East Gordon Street, 603 East Gordon Street, and 110 Trianon Street). See [D.E. 33] 14–16. Federal courts "are not at liberty to resolve every grievance over government policy, no

---

[3] The United States Supreme Court is currently reviewing whether to reconsider whether plaintiffs alleging a Just Compensation Clause claim must exhaust state administrative procedures to ripen their claim. See Knick v. Township of Scott, Pa., 138 S. Ct. 1262 (2018).

matter how significant" to the plaintiffs. Doe v. Obama, 631 F.3d 157, 160 (4th Cir. 2011). To invoke the power of a federal court, plaintiffs must demonstrate that they have standing under Article III of the Constitution. See id.; White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458–59 (4th Cir. 2005). Article III standing "implicates the court's subject-matter jurisdiction." South Carolina v. United States, 912 F.3d 720, 726 (4th Cir. 2019). To establish Article III standing, a plaintiff must show that "(1) [the plaintiff] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992); Doe, 631 F.3d at 160. These requirements are "the irreducible constitutional minimum of standing." Lujan, 504 U.S. at 560.

The first element requires a plaintiff to demonstrate an injury in fact to a "legally protected interest." Id. Additionally, the injury in fact "must be concrete in both a qualitative and temporal sense." Whitmore v. Arkansas, 495 U.S. 149, 155 (1990); see Beck v. McDonald, 848 F.3d 262, 271 (4th Cir. 2017). When an injury is threatened, that injury must be "certainly impending." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (emphasis omitted). "'Allegations of possible future injury' are not sufficient." Id. (emphasis omitted) (quoting Whitmore, 495 U.S. at 158). The "certainly impending" requirement ensures "that the alleged injury is not too speculative for Article III purposes." Lujan, 504 U.S. at 564 n.2; see Beck, 848 F.3d at 271. When a plaintiff seeks injunctive relief, the plaintiff's injury in fact requires more than simply an allegation of past exposure to illegal conduct. See, e.g., Lujan, 504 U.S. at 563–64; City of Los Angeles v. Lyons, 461 U.S. 95, 101–06 (1983); Suhre v. Haywood Cty., 131 F.3d 1083, 1090–91 (4th Cir. 1997). A plaintiff must

show a substantial likelihood of a "real or immediate threat that [he] will be wronged again." Lyons, 461 U.S. at 111.

Although plaintiffs allege that the Askew family owned four properties (510 East Gordon Street, 603 East Gordon Street, 607 East Gordon Street, and 110 Trianon Street), plaintiffs fail to allege that Askew himself owned any of the properties. See Compl. [D.E. 1] 4. In fact, Askew Jr. owned 603 East Gordon Street. See id. ¶ 11. "[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Kowalski v. Tesmer, 543 U.S. 125, 129 (2004) (quotation omitted). A party seeking third-party standing must show that (1) he has a "close relationship with the person who possesses the right" and (2) there is a "hindrance to the possessor's ability to protect his own interests." Id. at 130. Even assuming that Askew has a close relationship with the actual owners of the four properties, plaintiffs fail to plausibly allege any hindrance to the actual owners bringing suit. Accordingly, because plaintiffs fail to plausibly allege that Askew has an interest in the properties at issue, Askew lacks standing.

Similarly, Baker, Wade, and Washington lack standing to assert claims based on the remaining properties. The court has dismissed claims based on 412 North Mitchell Street, 607 East Gordon Street, and 610 East Independence Street because such claims are not ripe. Baker, Wade, and Washington do not have standing to bring claims based on the remaining properties (510 East Gordon Street, 603 East Gordon Street, and 110 Trianon Street) because plaintiffs do not allege that Baker, Wade, or Washington will suffer an injury-in-fact if defendants condemn those properties. Accordingly, Baker, Wade, and Washington lack standing. Therefore, all plaintiffs lack standing, and the court grants defendants' motion to dismiss plaintiffs' complaint.

8

III.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 23] and DISMISSES plaintiffs' complaint without prejudice for lack of subject-matter jurisdiction. The court DECLINES to address defendants' arguments under Rule 12(b)(2), (4), and (5). The court DENIES plaintiffs' motion for a TRO or preliminary injunction [D.E. 11] and plaintiffs' motion for a jury trial [D.E. 13].

SO ORDERED. This _15_ day of May 2019.

                                                  JAMES C. DEVER III
                                                  United States District Judge